IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

JACK LOSEE,

       Plaintiff,

v.

IOWA DEPARTMENT OF CORRECTIONS,
BETH SKINNER, IOWA PRISON
INDUSTRIES, ACCESS CORRECTIONS,
ATUL GUPTA, JEREMY LARSON[1],
CLERKS AT POLK COUNTY
COURTHOUSE, and LISA OSWALD,

       Defendants.

No. 4:21-cv-00092-RGE-HCA

INITIAL REVIEW ORDER

Plaintiff Jack Losee brings this complaint without the assistance of counsel under 42 U.S.C.

§ 1983. ECF No. 1. Losee is currently incarcerated at the Anamosa State Penitentiary, in Anamosa,

Iowa. *Id.* at 2. Losee has paid the full filing fee and is not proceeding in forma pauperis. Notice,

ECF No. 2. Losee requests appointment of counsel. ECF No. 3.

## I.    INITIAL REVIEW STANDARDS

Even though Losee has paid the full filing fee, the Prison Litigation Reform Act requires

federal courts to review all prisoner complaints filed against a governmental entity, officer, or

---

[1] At the time Losee filed his complaint, Jeremy Larson was the warden at the Anamosa State Penitentiary. ECF No. 1 at 4. The Court takes judicial notice that Randy Gibbs currently is the interim warden. *See Anamosa State Penitentiary*, Iowa Department of Corrections, https://doc. iowa.gov/about-us/about-institutions/anamosa-state-penitentiary (last visited May 24, 2021). Losee does not state in what capacity he is suing Larson.  "[W]hen a plaintiff's complaint is silent or otherwise ambiguous about the capacity in which the plaintiff is suing the defendant, our precedent requires us to presume that the plaintiff brings suit against the defendants in only their official capacities." *Remington v. Hoopes*, 611 F. App'x 883, 885 (8th Cir. 2015) (per curiam). An official capacity suit is appropriate because Losee is alleging his injury is caused by prison policies or customs. *See* ECF No. 1 at 5, 8. Losee may seek leave to amend his complaint to change the name of the warden currently serving at the Anamosa prison.

employee. 28 U.S.C. § 1915A(a). On review, the Court must identify the cognizable claims or dismiss the complaint, or any part of it, that it determines a) is frivolous or malicious, b) fails to state a claim upon which relief may be granted, or c) seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is "frivolous" if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A pro se complaint—one brought without the assistance of counsel—is held to "'less stringent standards than formal pleading drafted by lawyers.'" *Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). The Court must weigh all factual allegations in favor of the plaintiff unless the facts alleged are clearly baseless. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (determining what is "clearly baseless" is left to discretion of court ruling on *in forma pauperis* petition). Although Federal Rule of Civil Procedure 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (citations omitted).

2

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A complaint states a plausible claim for relief when its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

## II.    DISCUSSION OF CLAIMS

Losee's complaint alleges claims based on two general circumstances. First, Losee alleges Defendants and their policies prevent him from listening to music he has purchased as well as music of his own choosing. *See* ECF No. 1 at 5–8. His second claim challenges restitution payments in his state criminal action. *Id.* at 8–9.

### A.    Music

In 2013, Losee bought a MP3 music player. *Id.* at 5. At the time of his purchase, songs for the player were sold through the Iowa Department of Corrections Central Commissary. *Id.* An advertisement stated prisoners would own the music once it was purchased. *Id.*

On March 15, 2019, Losee's player would not connect with the music kiosk and eventually stopped working completely. *Id.* Losee purchased the device from Access Corrections, and he returned it for repair or replacement. *Id.* Access Corrections declined to repair the player because the player was "out of warranty." *Id.* Losee alleges he can no longer listen to the 1,407 songs he purchased, valued at over $2,500. *Id.*

Losee contends the lack of access to his music violates consumer protection laws and the Takings Clause of the Fifth Amendment. *Id.* He also alleges the arrangement between the prison and music provider results in price gouging and kickbacks. *Id.* at 5–6. Finally, Losee asserts the

music is unnecessarily censored without any legitimate penological interest to justify the censorship. *Id.* at 6–7.

### 1.      Lack of Access to Music

Losee alleges Iowa Department of Corrections Director Beth Skinner, Iowa Prison Industries Director Dan Clark, and Anamosa State Penitentiary Warden Jeremy Larson are denying him access to music for which he has already paid and which he was told he would own after purchasing. *Id.* at 5. He contends his inability to receive this music violates his rights under "the Consumer Fraud Act § 714.16; False Advertising, in violation of both state and federal[2] statutory laws; and the Takings Clause of the Fifth Amendment." *Id.* at 5.

 Unfair practices or false representations in connection with the sale of goods or services are unlawful under the Iowa Consumer Fraud Act. Iowa Code § 714.16(2)(a). However, only the Iowa Attorney General may bring an action on behalf of the state to enforce this law. *See Molo Oil Co. v. River City Ford Truck Sales*, 578 N.W.2d 222, 228 (Iowa 1998) (holding statute does not create express or implied private cause of action under Iowa Consumer Fraud Act). Consequently, Losee cannot bring his own claim under the Iowa Consumer Fraud Act.

Losee also alleges his inability to access his purchased music violates the Takings Clause of the Fifth Amendment. ECF No. 1 at 5. The Fifth Amendment provides, in part, that private property shall not "be taken for public use, without just compensation." U.S. Const., Amend. V. The Takings Clause does not prohibit the Government from taking private property for public use, but ensures proper compensation is given for the value of the property. *Lingle v. Chevron*

---

[2] The Court is not aware of any federal consumer fraud act nor does Losee refer to any specific federal statute. *See Williams v. NFL*, No. C14-1089 MJP, 2014 WL 5514378, at * 4 (W.D. Wash. Oct. 31, 2014) ("There is no statute entitled the Federal Consumer Protection Law or the Federal Consumer Fraud Act."). Thus, the Court will only consider whether Losee has any state statutory protection.

*U.S.A. Inc.*, 544 U.S. 528, 537 (2005) ("[I]t 'is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.'" (citations omitted)). The purpose of the clause is to "prohibit[] the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Schmidt v. Ramsey*, 860 F.3d 1038, 1046 (8th Cir. 2017) (quoting *Lingle*, 544 U.S. at 537) (further citations omitted)).

Losee does not allege his property was taken for any public use, and it is not his argument that the State has the right to take his property in the first place. As such, the claims are not proper under the Takings Clause. *See Byrd v. Washington*, No. 1:20-cv-176, 2021 WL 1200732, at * 5 (W.D. Mich. Mar. 1, 2021) (listing cases denying claims by prisoners for failing to show property was taken for public use), *report and recommendation adopted*, 2021 WL 1195732 (W.D. Mich. March 30, 2021)).

Rather, Losee's allegations are more appropriately characterized as a due process claim. Under the Fourteenth Amendment, no state shall deprive any person of life, liberty, or property without due process of law. U.S. Const. Amend. XIV, § 1. The "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Losee has a meaningful postdeprivation remedy by filing a claim in state court under Iowa's statutory tort claims procedure, Iowa Code Ch. 669. *See Dalrymple v. Dooley*, No. Civ. 12-4028-KES, 2012 WL 1252887, at * 2 (D.S.D. Mar. 28, 2012) (identifying adequate remedies available to plaintiff inmate such as tort action in state court or suit in small claims court). Where such relief is available, "relief under section 1983 is therefore not warranted." *Reese v. Kennedy*, 865 F.2d 186, 187 (8th Cir. 1989); *see also King v. City of Crestwood*, 899 F.3d 643, 649 n.6

(8th Cir. 2018) ("[T]he availability of a remedy after the alleged deprivation forecloses the finding of a violation of [the plaintiff]'s due process rights." (citing *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004))).

For the reasons set out above, Losee cannot state a viable claim against Defendants for lack of access to his device and music.

### 2.    Monopolized Distribution

Losee next alleges the Iowa Department of Corrections and the Iowa Prison Industries "entered into a monopolized kickback-based contract with Access Corrections that resulted in inflated sales prices on music players and song purchases, constituting price gouging and fraudulent concealment." ECF No. 1 at 5. Losee contends Defendants did not enter into the contract with the best interests of the inmates in mind but only to make as much money as possible. *Id.* at 5–6. He asserts Defendants ultimately charged Losee $146.85 for a twenty-dollar device. *Id.* at 6.

Losee does not articulate what specific statute or law Defendants allegedly violated by their actions. For the reasons stated above, Losee cannot bring any private right of action based on the Iowa Consumer Fraud Act. *See Molo Oil Co.*, 578 N.W.2d at 228. Further, any allegation of fraud must provide particular statements regarding the fraud. Fed. R. Civ. P. 9(b). "In order to satisfy the pleading requirements of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018) (further citations omitted). "Particularly in cases with multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Id.* (internal quotation omitted). Losee has

6

only given a conclusory description of the effects of the contract between Defendants and does not allege what specific acts Defendants did that could be construed as fraudulent.

Nor are these allegations sufficient to support a violation of the Due Process Clause. "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Instead, due process is only implicated if the conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Generally, charging high prices for commissary items is not an atypical and significant hardship in relation to the ordinary incidents of prison life. *See* Order 4, *Thompson v. Danker*, No. 4:17-cv-00020-JAJ-CFB (S.D. Iowa March 28, 2017) (400% markup on ramen noodle soup insufficient to show deprivation of property subject to due process protection).

Neither do the alleged terms of the contract violate the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (holding Eighth Amendment only applies to "those deprivations denying 'the minimal civilized measure of life's necessities.'"). There is "no constitutional right of access to a prison gift or snack shop." *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996). Without more, there is no right to competitively priced items sold from the commissary. *See, e.g.*, *Lewis v. Holloway*, No. 5:17-CV-05099, 2017 WL 3461303, at * 4 (W.D. Ark. Aug. 11, 2017) (listing cases finding no constitutional claim for being charged more for items than would cost in free world); *Newell v. Sheriff*, No. 1:11-cv-86, 2014 WL 4411045, at * 8–9 (E.D. Tenn. Sept. 8, 2014) (holding commissary prices, including $1 charge for ramen noodles and $1.60 for a roll of toilet paper, do not raise claims of constitutional magnitude).

Losee has therefore failed to allege any cognizable claim based on the "monopolized" contract for the sale of music players and song purchases.

### 3.     First Amendment Violation

Losee alleges in late 2013, the Iowa Department of Corrections worked with Access Corrections to ensure all music offered to Iowa prisoners was rated PG. ECF No. 1 at 6. Losee alleges editing the list resulted in the elimination of hundreds of works, including songs with the words "'Dirty,' 'Hell,' 'Hard,' 'Heavy,' and even 'Want'" in the title. *Id.* at 7. For example, he states the song, "Moby Dick" by Led Zeppelin, contains no lyrics at all but was removed from the approved song list even though the book by the same title is not restricted. *Id.* Losee acknowledges some songs were added back into the catalog in 2020 after Advanced Technologies Group took over the management of music sales, "but the editing on a large scale continues to this date." *Id.* He argues Defendants have no valid, rational reason or legitimate governmental interest for this overly broad restriction. *Id.* Losee alleges Iowa Department of Corrections Director Beth Skinner, Access Corrections, and Advanced Technologies Group president Atul Gupta are responsible for creating this censored list. *Id.*

"Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee." *Schad v. Mount Ephraim*, 452 U.S. 61, 65 (1981). Prisoners do not lose these rights merely because they are incarcerated. *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). Nonetheless, prisoners do not have the same breadth and scope of First Amendment rights as other citizens. *Id.* at 85. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

It cannot be said Losee's claim regarding overly broad censorship of music is frivolous. *See Florence v. Fraunheim*, No. 1:15-CV-01383-AWI-MJS (PC), 2017 WL, at 3453198, at * 3

(E.D. Cal. Aug. 11, 2017) (listing cases of other courts finding blanket ban on CDs with "explicit lyrics is sufficient, at the screening stage, to state a cognizable First Amendment Free Speech claim"), *report and recommendation adopted*, 2017 WL 4284620, at * 1 (E.D. Cal. Sept. 27, 2017).

Regardless, § 1983 claims only apply to state actors or private persons acting under color of state law. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (citing 42 U.S.C. § 1983 and holding private party may be held liable under § 1983 only if it acts under color of state law). One acts under color of state law if "the alleged deprivation by the private party was 'caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the state or by a person for whom the [s]tate is responsible.'" *Sabri v. Whittier All.*, 833 F.3d 995, 1000 (8th Cir. 2016) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The nexus between the State and the challenged action must be sufficiently close so "'that seemingly private behavior may be fairly treated as that of the State itself.'" *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 422 (8th Cir. 2007) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Losee alleges Beth Skinner, by virtue of her position as the Iowa Department of Corrections Director, is a state actor. ECF No. 1 at 3. However, Losee does not allege either Access Corrections or Advanced Technologies Group President Atul Gupta are state actors.

According to the complaint, Access Corrections stopped and Advanced Technologies Group began managing the catalog in 2018. ECF No. 1 at 7. Iowa's two-year personal injury statute of limitations applies to § 1983 complaints. *Wycoff v. Menke*, 773 F.2d 983, 984–85 (8th Cir. 1985). Thus, any claim against Access Corrections is barred by the applicable statute of limitations because it was only involved in editing the catalog until 2018.

The next question is whether Gupta was acting under color of state law. Losee alleges the Department of Corrections "requested that Access Corrections edit their music catalog for Iowa prisoners to a PG standard." ECF No. 1 at 6. Losee alleges Advanced Technologies Group then took over the editing role from Access Corrections. *Id.* at 7. Although this record is not complete, Losee has at least alleged the catalog editing was done at the behest of the state. Consequently, the claim against Gupta may go forward.

In addition to editing music, Losee asserts Iowa Department of Corrections Director Skinner and Anamosa State Penitentiary Warden Jeremy Larson "have begun to edit our television programs by blocking numerous shows and movies, even though every single station we receive shows nothing but programs and movies that are already edited for television." *Id.* at 7–8. He alleges such editing has no legitimate governmental or security justification. For the same reasons discussed above, these allegations are not without merit. *See Stone v. Jesson*, No. 11-cv-0951 (WMW/HB), 2017 WL 1050393, at * 4 (D. Minn. Mar. 17, 2017) (holding sex offender detainee's allegations that institution's policy restricts access to certain media "are sufficient to state a claim that his First Amendment rights are being violated").

Based on the above discussion, Losee's First Amendment claims with respect to music and television programming against Skinner, Larson, and Gupta may proceed.

### B.     Restitution

Losee was convicted of first-degree murder in 1983. ECF No. 1 at 8. The Court takes judicial notice of the proceedings in *State v. Losee*, No. FECR020774 (Iowa Dist. Ct. Polk Cty). *See United States v. Schneider*, 905 F.3d 1088, 1092 n.1 (2018) (holding court may take judicial notice of judicial opinions and public records). After he was sentenced, Losee "was also ordered to pay court cost and attorney fees to the extent he was reasonably able. In 1994, the department of corrections entered a restitution plan that provided Losee was required to pay a total of

10

$11,344.37 in court cost and attorney fees." *State v. Losee*, 895 N.W.2d 482, 483 (Iowa Ct. App. 2017).

Losee argues the restitution constitutes a judgment lien against him, and according to Iowa law, judgment liens are unenforceable twenty years after the judgment has been entered. ECF No. 1 at 8. He contends further enforcement of the lien violates state law and the Takings Clause of the U.S. Constitution. *Id.* at 8–9. Losee also argues the clerk in the state district court did not provide him with an expense sheet as required by state statute, and the failure to do so violated his due process rights. *Id.* at 9.

"Losee has challenged his restitution obligation many times in the past; all challenges have been denied." *Losee*, 895 N.W.2d at 483. His previous challenges include the two arguments raised here. *See* Order 1, *State v. Losee*, No. FECR020774 (Iowa Dist. Ct. July 21 2017). In 2017, the Iowa District Court held the claims were addressed in a 2013 state court decision, and therefore, were barred by the doctrine of res judicata. *Id.*

In the 2013 decision, the district court first rejected Losee's argument that a thirteen-year delay in implementing a restitution plan was prejudicial to him, and even provided an advantage to Losee because he did not have to pay restitution during that time. Ruling 2, *Losee*, No. FECR020774 (Iowa Dist. Ct. Feb. 25, 2013). The court went on to address Losee's second argument that restitution was no longer enforceable because it was beyond the twenty-year statute of limitations. *Id.* at 3. In this discussion, the court noted "[p]rior to 1992, orders for restitution could only be enforced during a period of custody, probation or parole." *Id.* The law was amended in 1992 to expand the enforcement of restitution orders. *Id.* at 3–4. The state court concluded that "while Iowa Code § 910.7A expanded the ability to enforce a restitution order against an individual who is no longer under the control of the State, it does not restrict the right of the State to enforce a restitution order against an individual who continues to be in custody in a penal or correctional

11

facility, even if that period of confinement exceeds the twenty year limitation for enforcing judgments contained in Iowa Code § 614.1(6)." *Id.* at 5–6.

Losee appealed the 2017 res judicata finding. *See* Notice of Appeal, No. 17-1335 (Iowa Aug. 23, 2017). However, the appeal was dismissed when Losee failed to file and serve the appendix. Order of Dismissal, *id.*, (Iowa Nov. 27, 2018). Consequently, the decision of the Iowa District Court is the standing decision with respect to Losee's claim that collection of restitution on his case violates Iowa law.

The Court next addresses whether either argument violates the federal constitution. Losee first argues withholding money to pay his restitution twenty years after his judgment violates the Takings Clause. ECF No. 1 at 8–9. The Takings Clause is not appropriate here. Losee does not concede the State had the right to withdraw restitution payments from his account.

To the extent Losee is raising a due process challenge, however, the claim also fails. Due process is a flexible concept, calling for procedural protections appropriate for the situation. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (further citations omitted). It generally includes some form of notice, opportunity to respond and present one's case, and an appeal process. *Id.* at 333–34. Inmates have a property interest in his or her prison funds account. *See Parrish v. Mallinger*, 133 F.3d 612, 614 (8th Cir. 1998) (noting inmate has property interest in money his mother sent to him in prison).

Under Iowa law, a

> defendant may challenge a restitution order by means of a timely appeal or through a petition pursuant to section 910.7. A defendant seeking to modify restitution has the option of filing a petition pursuant to section 910.7 or by filing a direct appeal. If the time for appeal has expired, however, then section 910.7 still provides a defendant with an avenue to challenge a restitution order. A petition filed pursuant to section 910.7 may be filed at any time during a defendant's period of probation, parole, or incarceration.

*State v. Gilleland*, 834 N.W.2d 82 (Iowa Ct. App. 2013) (internal citations omitted). Losee had a chance to appeal or to file a separate action to challenge any restitution, providing him with ample opportunity to respond and present his case. These extensive safeguards ensure Losee was not deprived of his property without due process. *See Mahers v. Halford*, 76 F.3d 951, 954–55 (8th Cir. 1996) ("inmates are not absolutely deprived of the benefit of their money when part of it is applied toward their restitution debts.").

Neither was due process violated when the clerk of the district court failed to prepare a statement of the fees and expenses at time of sentencing as required under Iowa law. *See* ECF No. 1 at 9.      Before restitution is ordered, Iowa law requires "[t]he clerk of court shall prepare a statement of court-appointed attorney fees ordered pursuant to section 815.9, including the expense of a public defender and court costs, which shall be provided to the presentence investigator or submitted to the court at the time of sentencing." Iowa Code § 910.3(2). As stated above, Losee had an opportunity to challenge his restitution order either by appeal or through § 910.7 proceedings.

Losee does not state what other process he believes should have been provided to him. He does not state why these proceedings were inadequate or that he was unable to avail himself of the proceedings. In fact, as previously stated, "Losee has challenged his restitution obligation many times in the past." *Losee*, 895 N.W.2d at 483. Although Losee has never prevailed, it does not mean his federal due process rights were ignored.

## III.    MOTION FOR COUNSEL

Losee requests the appointment of counsel, stating the issues involve policy matters of the Department of Corrections, and discovery requests will be complicated. ECF No. 3 at 1–2.

"Pro se litigants have neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). Where a litigant is proceeding

in forma pauperis in a civil case, the Court may request an attorney to represent such litigant upon finding the plaintiff and the court will benefit from the assistance of counsel based on the nature of the case. *Id.*; 28 U.S.C. § 1915(e)(1). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, No. 20-2560, 2021 WL 1517123, at *1 (8th Cir. June 4, 2021) (per curiam).

Losee has paid the full filing fee in this matter and did not seek leave to proceed in forma pauperis. *See* ECF Docket Entry of April 9, 2021. Even so, his current pleadings demonstrate his competence to state his claims and relevant arguments. The factual and legal complexity of his claims are not so difficult that they will require extraordinary research or discovery. Moreover, although Losee is currently incarcerated, Defendants are expected to comply with all discovery requests from inmates in the same manner that they would with any other litigant. For these reasons, the Court denies Losee's request for counsel.

## IV.    SUMMARY AND CONCLUSION

For the reasons given above,

**IT IS ORDERED** that Plaintiff Jack Losee's First Amendment claims with respect to music and television programs against Iowa Department of Corrections Director Beth Skinner and Anamosa State Penitentiary Warden Jeremy Larson, and against Advanced Tehnologies Group President Atul Gupta may proceed. Service of process on the claims described above shall issue to Defendants Skinner and Larson, and to the Attorney General of the State of Iowa by the electronic filing of this order. The Attorney General is directed to notify this Court immediately if he lacks the consent of Defendants to appear generally on their behalf and submit to the jurisdiction of the Court.

Within ten days of this order, Losee shall provide the Court with information as to where Defendant Gupta may be served.

Because the Court has found that a reply is necessary pursuant to 42 U.S.C. § 1997e(g)(2), **Defendants must reply to the complaint within 60 days**.

**IT IS FURTHER ORDERED** that Plaintiff Jack Losee's remaining claims "lack[] an arguable basis either in law or in fact," *Neitzke*, 490 U.S. at 325, and are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff Jack Losee's request for counsel, ECF No. 3, is **DENIED**.

**IT IS SO ORDERED**.

Dated this 21st day of July, 2021.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE