IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JACK LOSEE,<br><br>        Plaintiff,<br><br>vs.<br><br>IOWA DEPARTMENT OF CORRECTIONS, BETH SKINNER, IOWA PRISON INDUSTRIES, ACCESS CORRECTIONS, ATUL GUPTA, JEREMY LARSON, CLERKS AT POLK COUNTY COURTHOUSE, AND LISA OSWALD,<br><br>        Defendants. | Case No. 4:21-cv-00092-RGE-HCA<br><br><br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT SKINNER AND LARSON'S MOTION TO DISMISS** |

**TABLE OF CONTENTS**

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   **DEFENDANT SKINNER AND LARSON'S MOTION TO DISMISS MUST BE GRANTED AS THE ALLEGATIONS LACK A JURISDICTIONAL BASIS AND FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** . . . . . 3

    A.    The Policy of the Iowa Department of Corrections in Restricting Music to Offender With Explicit Lyrics is Constitutional . . . . . . . . . . . . . . . . 4

         1.    The Request by Losee is to Stop the Ban on Explicit Music Purchases is Moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         2.    Any Ban on the Purchase of Explicit Music is Constitutional . . . . . . . 5

         3.    The Request for Damages is Barred by Qualified Immunity . . . . . . . 7

    B.    The Policy of the Iowa Department of Corrections in Restricting Television Content of Offenders With explicit Content is Constitutional . . . . . . . . . . . . 8

**III.     CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**I.      INTRODUCTION**.

The Plaintiff, Jack Losee, an offender at Anamosa State Penitentiary ("ASP"), alleged First Amendment constitutional violations stemming from a type of music he was allowed to purchase and the type of programming that he was allowed to see on television. The Defendants[1] Beth Skinner (Iowa Department of Corrections ("IDOC") Director) and Jeremy Larson (former ASP Warden) assert that the allegations fail to state a claim upon which relief can be granted and lacks a jurisdictional basis to proceed. *See* Fed R. Civ. P. 12(b)(1) and (6). The argument of Defendant Skinner and Larson is that the general restriction on the ability of offenders to order explicit music and watch explicit programing is without merit.

The issue with regard to the rights of offenders to watch certain movies, watch television programming and even the type of publications is a heavily debated issue. As to publications, there are challenges pending to a new Iowa law – § 904.310A – which restricts access to publications which are sexually explicit or contain nudity.[2] Further, the IDOC has always limited to some degree sexually explicit materials, *Dawson v. Scurr*, 986 F.2d 257 (8th Cir. 1993) *cert. denied* 510 U.S. 884 (1993), and the rationale for the renewed restrictions on such materials is evident by recent court decisions. *Sink v. State of Iowa*, 888 N.W.2d 682, 2016 WL 5930337

---

[1]Defendant Atul Gupta and Advanced Technologies Group are represented by separate counsel.

[2]The issue as to the constitutionality of the Iowa statute is being considered in *Gregory, et al. v. State of Iowa, et al.*, No 21-0419 which is awaiting final briefing and submission to the Iowa Supreme Court. As well, the same issue is pending in *Lindgren v. State of Iowa, et al.*, No 4:18-cv-00404-RP (S.D. Iowa 2020).

(Iowa App. 2016) (female staff member at an Iowa prison sexual harassment stemming from alleged sexually graphic movies shown at the prison).

The precise argument of Defendants Beth Skinner and Jeremy Larson is that the claims brought by Losee must be dismissed as limits on explicit lyrics in the Iowa Department of Corrections is allowed, *Herlein v. Higgins*, 172 F.2d 1090, 1092 (8th Cir. 1999), and there is no right to watch particular television programing in prison. *See Downs v. Ludwick*, 2015 WL 13283395 (S.D. Iowa 2015); *Downs v. Ludwick*, 2015 WL 1333482 (S.D. Iowa 2015) (*reconsideration denied*); *Downs v. Ludwick*, 632 Fed. Appx, 319 (8th Cir. 2016) (*judgment affirmed*).

## II.   DEFENDANT SKINNER AND LARSON'S MOTION TO DISMISS MUST BE GRANTED AS THE ALLEGATIONS LACK A JURISDICTIONAL BASIS AND FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The basis of Defendant Skinner and Larson's motion is Federal Rules Civil Procedure 12(b)(1) (lack of jurisdiction) and 12(b)(6) (failure to state a claim). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is "plausible on its face" when the allegations allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged, which is more than "a sheer possibility" that the defendants acted unlawfully. *Id.* (citation omitted). A plaintiff merely alleging facts that are "consistent with" liability is insufficient. *Id.* (citation omitted).

In considering whether a complaint meets the plausibility standard, the court must accept all factual allegations as true; however, the court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Carton v. General Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (citing *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009)). Speculative, conclusory, or nonspecific allegations are insufficient. *Cooper v. Schriro*, 189 F.3d 781, 784-85 (8th Cir. 1999).

    **A.**    **The Policy of the Iowa Department of Corrections in Restricting Music to Offender With Explicit Lyrics is Constitutional.**

        **1.**    **The Request by Losee is to Stop the Ban on Explicit Music Purchases is Moot.**

The first potential problem with the assessment of the complaint of Losee is that the system used by the IDOC was a music purchase system – in which the offender could purchase the rights to a song – and maintain possession of recording of a song on a recording device.  As Losee alleges, the system that allowed him to purchase and store such songs on a device was discontinued.  As such, he cannot purchase new songs – or even play his songs previously purchased.  The unfortunate reality is that as technology advances, the prior purchases of music can be rendered obsolete (e.g. 8-track tapes, cassette tapes, compact discs, etc...).

Losee alleges that he has been without his MP3 player since March, 2019[3]. Complaint, Docket # 1, p. 5.  Losee alleges that the IDOC has indicated that they have been attempting to get to a new music system (a subscription based music system), but it has not been completed.  The problem is that Losee is complaining about a music system (and a system by which the songs

---

[3]Defendants Skinner and Larson assert that since the "claim" initiated on March 29, 2019 – that the claim action is beyond the applicable statute of limitations.

were restricted) that has long since ceased.  Any alleged restrictions of songs with explicit content ended when he could no longer play or purchase the songs.

The problem with the claims of Losee is that he is no longer subject to the music purchase system which he believes is unconstitutional.  He has not and cannot purchase the music subject to the alleged unconstitutional restrictions.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir.1985) (claim "to improve prison conditions is moot if [plaintiff] is no longer subject to those conditions"); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999).

Likewise his complaint is not likely to be the type of issue which is capable of repetition and evading review.  Such is exception "applies only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again[.]"  *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998) (internal quotations and citations omitted).

Due to the technology changes, any new music system will likely be a subscription based system.  While the music catalogue may be different then what was offered, the parameters of what will be offered is not yet available.  In short, there is not a dispute about the present music program.

### 2. Any Ban on the Purchase of Explicit Music is Constitutional.

The major problem with the merits of the claim of Losee is that certain music is not allowed and that restrictions on explicit music have been upheld.  In *Herlein v. Higgins*, 172 F.2d 1090, 1092 (8th Cir. 1999) the Eighth Circuit considered such a claim with regard to an Iowa

prison policy which prevented offenders from receiving cassette tapes with parental advisory labels. The Eighth Circuit held that:

> In sum, we believe that the ban on the possession of tapes with labels that warn of explicit lyrics is reasonably related to the legitimate penological objective of maintaining prison security. There is a rational connection between the policy and the government interest, Mr. Herlein has significant alternative means of exercising his asserted right, there are no alternative policies to accommodate Mr. Herlein that involve only a de minimis cost, and the proposed alternatives may present the threat of a significant ripple effect on guards, prisoners, and resources at MPCF.
>
> Furthermore, we believe that the Supreme Court's holding in *Turner* requires the result that we reach. The alleged constitutional infirmity of the ban on tapes with warning labels is its overbreadth, but we believe that the scope of the ban on inmate-to-inmate correspondence that was upheld in Turner was far more pronounced than the one here. The letters between inmates might have concerned any number of harmless topics, while tapes with warning labels have at least been previously judged to have potentially disruptive content. The challenged policy therefore does not violate the First Amendment.

*Id.* at 1091-92.

Understandably, there is a potential difference between what were potentially "explicit" lyrics in *Herlein* and what Losee claims may have been excluded. However, the ban on "explicit" materials in *Herlein* certainly encompasses any word descriptions in the title of a song alleged by Losee. The restriction in *Herlein* was well directed to stop the majority of the content which was deemed offensive.

The restriction of a general category – or the choosing of certain words as alleged by Losee – reflects the difficulty in an even more individualized review as formerly completed by

the IDOC with regard to publications. *See Dawson v. Scurr*, 986 F.2d 257 (8th Cir. 1993) *cert. denied* 510 U.S. 884 (1993). There has been no claim that there should be a music review committee or individual review of songs.

### 3. The Request for Damages is Barred by Qualified Immunity.

The final problem with respect to the claim with regard to any restriction as to the music purchase program is that the claim would be barred by qualified immunity. Losee did request damages as a part of this action – which stemmed in part from the claims associated with his ability to purchase music. If the claim is interpreted as requesting damages from the restrictions associated with the restrictions, qualified immunity must be granted for Defendants Skinner and Larson.

The Defendants are entitled to qualified immunity as their conduct does not violate clearly established law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*., at 639, 107 S.Ct. 3034; *See White v. Pauly*, ___U.S. ___137 S.Ct. 548, 196 L.Ed.2d 463 (2017).

The established law in this action is the decision in *Herlein*. There may be differences between the ban on explicit lyrics cassettes in *Herlein* and the allegations in the present case, but the differences are minor and based on the semantics of the policies.

**B.    The Policy of the Iowa Department of Corrections in Restricting Television Content of Offenders With explicit Content is Constitutional**.

The issues of television access have been litigated in several cases stemming from Iowa prisons.  *See More v. Farrier*, 984 F.2d 269 (8th Cir. 1993) ("On this record, the prison officials may rationally decide that installing cable service in the cells of the Special Needs Unit is not worth the effort even though the cost of installation would be minimal"); *Aswegan v. Bruhl*, 113 F.3d 109 (8th Cir. 1997) ("We thus reverse the district court's holding that Aswegan was entitled to access to cable television beyond that already provided in the infirmary's television room "). While the issue in the present case concerns more than just physical access to a television – Losee cannot prevail.

The law is established that:

> **Inmates have no constitutional right to watch television or listen to a radio.** *Temple v. Dahm*, 905 F. Supp. 670, 674 (D. Neb. 1995); *see also Murphy v. Walker*, 51 F.3d 714, 718 n. 8 (7th Cir. 1995) ("We find no support in the case law for Murphy's claim that denying him ... television amounts to a constitutional violation"); *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993) (Equal Protection Claim-holding inmates have no fundamental right to in-cell cable television); *Manley v. Fordice*, 945 F. Supp. 132, 137 (S.D. Miss. 1996) ("No court has recognized a federal constitutional right to the usage of radio and television by inmates"). **While it might make incarceration less onerous, Plaintiff has no right to view television.**  Defendants are entitled to summary judgment on this claim.

*Russell v. Hider*, 2016 WL 4014106 (W.D. Ark. 2016) (*emphasis added*).

This same conclusion was determined in a case stemming from Iowa State Penitentiary. In *Downs. v. Ludwick*, 2015 WL 13283395 (S.D. Iowa 2015)[4] the trial court held that:

> Even if Downs could at some point convince a Court that he had a sincere religious belief requiring access to uncensored material in all forms, that belief would have to be balanced by security needs within the prison. At this point in time there is no clearly established right for an inmate to have access to totally uncensored materials in all forms, and that is what Downs seeks. *See, e.g., Jewell v. Gonzales*, 420 F. Supp.2d 406 (W.D.Pa 2006)("We conclude that the use of the R–rating as a screening tool is rational within the context in which it is utilized by the BOP."); *Avila v. Cate*, 2011 WL 2680844 (E.D.Cal. 2011)(same). **Prison officials therefore violated no clearly established right by denying Downs unlimited access to all, for example, R–rated movies. For that reason, they are entitled to qualified immunity, and Defendants' motion for summary judgment as to this claim is therefore granted.**

*Id.* (emphasis added).

The result is that if the allegations regarding television programing are considered, they should be summarily rejected. Offenders do not have a constitutional right to all types of programming that may be available to be played on a television. Rather, there are limitations on what television signals an offender may receive on a televison – whether the programming comes from an over the air television signal or a satellite/cable service. A prison is not required to provide television programming of any kind. If a signal is provided, there can naturally be limits on the type of materials that can be shown.

---

[4] *Downs v. Ludwick*, 2015 WL 13333482 (S.D. Iowa 2015) (*reconsideration denied*); *Downs v. Ludwick*, 632 Fed. Appx. 319 (8th Cir. 2016) (*judgment affirmed*).

The recent history in Iowa is that there have been issues with offenders being shown explicit materials. *Sink v. State of Iowa*, 888 N.W.2d 682, 2016 WL 5930337 (Iowa App. 2016) To that end restrictions have been placed on published materials that is allowed to enter Iowa prisons that contain nudity or is sexually explicit. *See* § 904.310A Iowa Code (2021).

The allegation of Losee appears to be based on a claim that even programming that is received into the prison is edited for public television, that it is sometimes blocked. Losee appears to refer to the ratings that are assigned to every television show that is broadcast. *See generally* 47 U.S.C. § 270. His apparent argument is that because all television shows that are edited for content on television, that he should have access to all such shows.

Television shows have a rating. There is no constitutional requirement that an offender be able to receive all programming that has every rating. Rather, a prison, as was completed in this case, may restrict programming by the rating system that is assigned by the networks or based on a content advisory. That is, whether material is precluded due to a rating system or a content advisory – a restriction can be placed on such materials by the prison.

The situation complained of by Losee is the same situation that was faced by the Eighth Circuit in *Herlein*. In *Herlein* a blanket prohibition on materials with an explicit lyrics advisory was not allowed into the prison. In this case, it is the same scenario, programming is not allowed into the institution which does not have an acceptable rating or content advisory.

Finally, even if the claim of Losee is examined as to a potential entitlement of monetary damages, the Iowa officials must be granted qualified immunity. There is no well established law that offenders are allowed to receive any and all content that may be available to a typical television subscriber. *See Downs. v. Ludwick*, 2015 WL 13283395 (S.D. Iowa 2015) *affirmed*

*Downs v. Ludwick*, 632 Fed. Appx, 319 (8th Cir. 2016).  Therefore, even if a claim of monetary damages is considered, qualified immunity must be granted.

**III.    CONCLUSION.**

The motion to dismiss filed by the Defendants Skinner and Larson must be granted.

THOMAS J. MILLER
Attorney General of Iowa


 /s/ WILLIAM A. HILL
WILLIAM A. HILL (AT0003532)
Assistant Attorney General
Special Litigation Division
Hoover Building, 2nd Floor
1305 E. Walnut
Des Moines, IA  50319
Ph:  (515) 281-6162
Fax:  (515) 281-4902
Email: William.Hill@ag.iowa.gov
ATTORNEYS FOR BETH SKINNER AND JEREMY LARSON

Original filed.

Copy to:

Jack Losee
Inmate  #0403522
Anamosa State Penitentiary
Box 10
Anamosa, IA 52205

Ryan Stefani
Nyemaster Goode, P.C.
700 Walnut Street, Suite 1600

**Proof of Service**
The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on September 17, 2021.

_X_ U.S. Mail        ___ FAX
___ Hand Delivery    ___ Overnight Courier
___ Federal Express  ___ Other
_x_ Electronically
Signature:    /s/  Jessica R. Porter

Des Moines, IA 50309
Attorney for Defendants Atul Gupta and
Advanced Technologies Group